IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| Clean Venture, Inc., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. |
| Sparrows Point Metal Recovery, LLC<br>600 Shipyard Road<br>Baltimore, Maryland 21299 | *<br><br>* | |
| and | * | COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE AND |
| Barletta Engineering Corporation<br>(an unregistered foreign corporation operating<br> in Maryland)<br>c/o Maryland State Department of<br> Assessments and Taxation | *<br><br>*<br><br>* | OTHER RELIEF |
| and | * | |
| SPS Limited Partnership, LLLP<br>600 Shipyard Road<br>Baltimore, Maryland 21299 | *<br><br>* | |
| and | * | |
| John G. Bulman<br>72 Old Forge Road<br>Scituate, Massachusetts 02066, | *<br><br>* | |
| and | * | |
| Vincent F. Barletta<br>24 Spice Street<br>Charlestown, MA 02129 | *<br><br>* | |
| and | * | |
| Timothy J. Barletta<br>24 Spice Street<br>Charlestown, MA 02129 | *<br><br>* | |

and                                          *

James Rogers                                 *
24 Spice Street
Charlestown, MA 02129                        *

and                                          *

Jeffrey Siragusa                             *
600 Shipyard Road
Baltimore, Maryland 21299                    *

and                                          *

Whirlwind Capital LLC                        *
50 Shawmut Road
Canton, MA 01021                             *

and                                          *

BWI Sparrows Point LLC                       *
1209 Orange Street
Wilmington, Delaware 19801,                  *

and                                          *

John Does 1-10,                              *

Defendants.                                  *

*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT

### Jury Trial Demanded

Clean Venture, Inc. ("Clean Venture") defendants as follows:

### PARTIES, VENUE AND JURISDICTION

1.       Clean Venture is a New Jersey corporation authorized to conduct business in the

State of Maryland.

2.      Defendants Sparrows Point Metal Recovery, LLC, SPS Limited Partnership, LLLP and BWI Sparrows Point LLC are entities incorporated in Maryland

3.      Defendant Barletta Engineering Corporation is an unregistered foreign corporation operating in Maryland and not authorized to conduct business in Maryland.

4.      Defendant Bulman is an employee or and counsel to SPS Limited Partnership, LLLP and is the incorporator of Sparrows Point Metal Recovery, LLC and a Massachusetts resident.

5.      Defendant Vincent Barletta is a General Partner of SPS Limited Partnership, LLLP, president of Barletta Engineering Corporation, an officer of North American Ship Recycling, Inc. ("NASR"), and an officer of Whirlwind Capital.  Whirlwind Capital is the owner of SPS Limited Partnership and/or other defendants herein, directly or indirectly.

6.      Defendant Timothy Barletta is an officer of NASR.   Defendant James Rogers is or was an officer of NASR.  Jeffrey Siragusa is or was Manager of NASR with responsibilities including, communication with Clean Venture about Clean Venture's work and invoicing. Defendants John Doe 1-10 are individuals and entities who participated in the conspiracy that this Complaint describes but whose identities Clean Venture does not presently know.

7.      "Defendants" refers to all of the defendants named in this Complaint.

8.      The Court has personal jurisdiction over defendants because all defendants do business in, are residents of or have a principal place of business in Maryland, or transact business or perform work or service in the State; contract to supply goods, food, services, or manufactured products in the State; caused tortious injury in the State by an act or omission in the State; or caused tortious injury in the State or outside of the State by an act or omission

outside the State and regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) in that the action arises between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court further has subject matter jurisdiction over Defendants pursuant to 28 U.S.C. §1331 and 18 U.S.C. §1964(c) as this case includes claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

10. Venue is based on 28 U.S.C. § 1391(a).

**FACTS**

11. On or about August 17, 2004, defendants Vincent and Timothy Barletta ("defendants Barletta"), and defendant Bulman, along with others presently unknown, formed NASR through an entity called "Eiger Trust," which by information and belief, defendants Barletta wholly controlled themselves or through corporate or similar entities that they controlled. Defendants Barletta became officers of NASR. Defendants Barletta and others presently unknown ("John Does 1-10") then caused NASR to enter into a lease with defendant SPS Limited Partnership, LLLP for the lease from SPS Limited Partnership, LLLP of space at the Sparrows Point Shipyard, owned by defendant BWI Sparrows Point LLC.

12. Through NASR, defendants bid on contracts offered by the United States Maritime Administration ("MARAD") for the dismantling of retired MARAD ready reserve fleet vessels. The first of these contracts was for the dismantling of the vessels LAUDERDALE and

MORMAC MOON.  The MARAD contracts required the truthful estimate of the cost of performing the work, including the cost for subcontractors, and then to truthfully report to MARAD the cost of work actually performed.

13.     Defendants used NASR to obtain a subcontract from Clean Venture for the environmental remediation and hazardous waste removal work that the MARAD contract required, and thereafter observed Clean Venture perform the work and received bills for the work.  NASR never had its own employees performing billing and accounts payable functions, but instead, defendant Barletta Engineering and/or another entity controlled by some or all of the defendants, performed such work and controlled all NASR accounts.  NASR at all time was a shell corporation, with all major managerial functions performed by persons not employed by NASR.

14.     Clean Venture completed the work on the MORMAC MOON and LAUDERDALE, however, defendants caused NASR not to pay for such work. Instead, defendants misrepresented that payment would be forthcoming, and then caused NASR to misrepresent, after Clean Venture had completed all of the work and after Clean Venture=s invoices had been outstanding for months, that Clean Venture somehow had done the work improperly and therefore should not be paid approximately $750,000 of what Clean Venture properly had charged under its contract with NASR.

15.     By information and belief, defendants or some of them, fraudulently received some or all of the $750,000 that Clean Venture was due for its work on the MORMAC MOON and LAUDERDALE.  Defendants, or some of them, caused the transfer from NASR to other defendants of funds due Clean Venture from Clean Venture's work on the MORMAC MOON

and LAUDERDALE, for the express purpose of not paying Clean Venture for that work.

16. In 2006, Clean Venture brought suit in a New Jersey state court against NASR, to recover what was owed to Clean Venture for Clean Venture's long-completed work on the MORMAC MOON and LAUDERDALE. Instead of causing NASR to pay what Clean Venture properly had invoiced, instead, defendants, or some of them, conspired to delay Clean Venture=s suit as long as possible to avoid that proper payment. First, the defendants removed the case to the United States District Court for the District of New Jersey, and then insisted on its transfer to this District. Defendants thereafter caused NASR to delay the suit proceeding in this Court, and to continue to refuse to pay Clean Venture the approximately $750,000 that Clean Venture was owed.

17. Defendants caused NASR, for the purpose of performing its contracts with MARAD, to acquire tools and equipment necessary to perform that work. Defendants also caused NASR to acquired computers, office equipment and furniture, and documents, as well as to maintain bank accounts.

18. In July, 2007, defendants caused NASR to buy from MARAD for approximately $61,000 the vessel HOIST. The contract that defendants caused NASR to enter with MARAD, provided that NASR could sell the metal from the HOIST and thereby bring revenue to NASR. Both the HOIST, and another MARAD-owned ship, the SPHINX, were towed from the Hampton Roads, Virginia area to the Sparrows Point site controlled by defendants.

19. Sometime shortly before August, 2007, defendants caused NASR to enter into a further, $2.1 million contract with MARAD to dismantle five further MARAD-controlled vessels. By information and belief, performance of this contract would have brought further

revenue to NASR.  As a requirement of that contract, defendants caused NASR to issue a letter of credit for $300,000 to secure NASR's performance on the contract.  By information and belief, such $300,000 were proceeds directly derived from Clean Venture's work, which defendants caused Clean Venture not to receive.

20.  Defendants were aware that NASR had no good defense to paying Clean Venture, however, continued to direct NASR not to pay Clean Venture.  On September 10, 2007, this Court began trial, and at the end of trial that day, held for Clean Venture in the entire amount of Clean Venture's overdue invoices.  The next day, September 11, 2007, Clean Venture and counsel representing NASR, Joseph Bowser and Womble, Carlyle, *et al.*, entered a $750,000 settlement and agreement to judgment, with Clean Venture, and informed the Court of that settlement.

21.  That day, September 11, 2007, however, after leaving the Court, NASR counsel, Womble, Carlyle, *et al.*, refused to approve a draft judgment submitted to the Court, by Clean Venture, even though this was exactly what Womble, Carlyle, et al. had agreed to do, on behalf of NASR, as a part of the settlement.  Instead, directed by or acting on the behalf of one or more of the defendants, Womble, Carlyle, *et al.* resisted and delayed the entry of any judgment.  By informatoin and belief, the purpose of this delay was so that defendants could direct and receive the fraudulent conveyance of the assets of NASR, namely, funds, equipment and supplies, and the HOIST.

22.  In particular, defendant Bulman on September 25, 2007, acting by information and belief on the direction of and agreement with the defendants, incorporated Sparrows Point

Metal Recovery, LLC, and at about that time, directed the fraudulent conveyance to Sparrows Point Metal Recovery, LLC all assets of NASR, including the HOIST.  Through Sparrows Point Metal Recovery, LLC , defendants, including Barletta Engineering, continued work dismantling the HOIST and SPHINX and obtaining income from that work, which some or all of the defendants, directly or indirectly, took for themselves.

23. Throughout this time, defendants, acting through NASR, continued to misrepresent that NASR was an active, ongoing corporation, and to conceal that NASR was insolvent and in fact had for some time been insolvent.  Immediately before the trial of the case in this Court, or sometime during it, defendants caused the termination of the lease between NASR and SPS Limited Partnership LLLP, effectively ceasing NASR's right to operate at the Sparrows Point Shipyard facilities and in default of NASR's obligations to MARAD, however, defendants did not cause MARAD or Clean Venture to be informed of this and concealed it from MARAD and Clean Venture.  Defendants further, intentionally and fraudulently, including with the advice and/or knowledge and/or assistance of their legal counsel, caused the transfer of assets from NASR to themselves, and other entities, without the payment of due consideration and for the express purpose of avoiding payment to creditors.  Counsel to NASR, SPS Limited Partnership LLLP, and Barletta Engineering admitted to MARAD, that the formation of Sparrows Point Metal Recovery, LLC on September 25, 2007, was for the express purpose of avoiding the payment to Clean Venture of the $750,000 judgment of this Court.

## RICO ELEMENTS

### Wire Fraud

24. The scheme as set out above, including, but not limited to, the transfer of assets by

the use of the wires, interstate telephone calls and interstate communications by e-mail to further that scheme, constitutes a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

25. Defendants carried the scheme by means of wire in interstate commerce for the purpose of executing such scheme or artifice.

26. The fraud in the scheme, including, defendants' operation and carrying out that scheme through the enterprise of NASR, was material because the misrepresentation had the natural tendency to influence or is capable of influencing Clean Venture to change its behavior.

27. Defendants intended to defraud Clean Venture at the time they carried out their fraudulent scheme.

28. These activities constitute criminal activities under 18 U.S.C. § 1343.

29. These activities constitute racketing activities under 18 U.S.C. § 1961.

30. These activities constitute a pattern of racketeering under 18 U.S.C. § 1961.

## COUNT I

### Setting Aside of Fraudulent Conveyance

31. Clean Venture repeats the foregoing paragraphs.

32. Defendants have caused NASR to convey NASR's interests in property.

33. The conveyances of assets described here were made when NASR was insolvent or rendered NASR insolvent. NASR received less than a reasonably equivalent value for the conveyances of its assets. Defendants made the conveyances with the actual intent to hinder, delay, or defraud NASR's creditors, including Clean Venture.

34. NASR did not receive fair consideration for the conveyances described herein.

35. Defendants caused the conveyances to be made and they or others accepted the benefits.

36. Pursuant to § 15-201 *et seq*. of the Commercial Law Article of the Annotated Code of Maryland, the conveyances effectuated by the Assignments should be set aside to the extent necessary to satisfy Clean Venture's judgment.

## COUNT II

### RICO, 18 U.S.C. §1962(a)

37. Clean Venture repeats the foregoing paragraphs.

38. Defendants have derived income from a pattern of racketeering activities.

39. Defendants used or invested the income in the acquisition, establishment, or operation of their enterprise.

40. The enterprise involved or affected interstate commerce.

41. Defendants violated 18 U.S.C. §1962(a).

42. Clean Venture is entitled to threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c).

## COUNT III

### RICO, 18 U.S.C. § 1962(b)

43. Clean Venture repeats the foregoing paragraphs.

44. Defendants engaged in a pattern of racketeering activities to acquire or maintain an interest in or control of NASR.

45. The enterprise engaged in or its activities affected interstate commerce.

46. Defendants violated 18 U.S.C. § 1962(b).

47.     Clean Venture is entitled to threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c).

## COUNT IV

## RICO 18 U.S.C. § 1962 ( c)

48.     Clean Venture repeats the foregoing paragraphs.

49.     Defendants were associated with the NASR enterprise to conduct or to participate in the conduct of the enterprise's affairs through a pattern of racketeering activities.

50.     The enterprise engaged in or its activities affected interstate commerce.

51.     Defendants violated 18 U.S.C. § 1962(c).

52.     Clean Venture is entitled to threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c).

## COUNT V

## RICO 18 U.S.C. § 1962(d)

53.     Clean Venture repeats the foregoing paragraphs.

54.     Defendants conspired to violate 18 U.S.C. § 1962(a)-(c).

55.     Defendants violated 18 U.S.C. § 1962(d).

56.     Clean Venture is entitled to threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c).

## COUNT VI

### Unjust Enrichment

57.     Clean Venture repeats the foregoing paragraphs.

58.     Defendants received the benefits of assets of NASR for which they provided no or

inadequate consideration.

59. Allowing defendants to keep the benefit of these benefits would unfairly confer a benefit on the defendants to the detriment of Clean Venture.

## COUNT VII

### Civil Conspiracy

60. Clean Venture repeats the foregoing paragraphs.

61. Defendants agreed to fraudulently convey the assets of NASR to themselves or others.

62. Defendants wrongfully and unlawfully transferred the assets of NASR in furtherance of the parties' conspiracy.

63. Through these fraudulent conveyances, defendants facilitated and completed the unlawful transfers of NASR's assets in furtherance of the parties' conspiracy.

64. As a result of the conspiracy among defendants, Clean Venture has suffered severe economic injury, including, but not limited to, the inability to collect on its judgment.

## COUNT VIII

### Aiding and Abetting

65. Clean Venture repeats the foregoing paragraphs.

66. Defendants caused the fraudulent conveyance of NASR's assets.

67. Defendants possessed actual knowledge of that fraudulent conveyance.

68. Defendants aided, abetted and encouraged the fraudulent conveyance and knowingly provided substantial assistance, aid and encouragement in the commission of those actions by facilitating and executing them.

69. As a result of defendants' tortious aiding and abetting of the fraudulent conveyances, Clean Venture has suffered severe economic injury, including, but not limited to, the inability to collect the judgments.

## COUNT IX

### Breach of Fiduciary Duty
### Defendants Timothy Barletta and Vincent Barletta

70. Clean Venture repeats the foregoing paragraphs.

71. As officers and/or directors of NASR, Timothy Barletta and Vincent Barletta owed creditors a fiduciary duty once NASR became insolvent, including, to provide for the payment of those creditors and not to convey such assets from NASR to others so that NASR would be unable to pay creditors.

72. Timothy Barletta and Vincent Barletta breached their fiduciary duty by allowing or approving the fraudulent conveyances, transactions for which the NASR did not receive reasonably equivalent value.

73. As a result of this breach of fiduciary duty, Clean Venture has suffered severe economic injury, including, but not limited to, the inability to collect on its judgment.

## COUNT X

### Constructive Trust

74. Clean Venture repeats the foregoing paragraphs.

75. Defendants possess or are in control of assets of NASR, which they were fraudulently conveyed or caused to be fraudulently conveyed or transferred from NASR. Clean Venture respectfully requests that the Court impose a constructive trust on defendants and those assets, for the payment of the judgment due Clean Venture.

## COUNT XI

### Injunctive Relief

76. Clean Venture repeats the foregoing paragraphs.

77. Based upon the pattern of conduct engaged in by defendants, Clean Venture has reasonable cause to believe that defendants have caused and may continue to cause NASR to further dispose of assets which would cause continuing harm to Clean Venture.

76. Unless defendants are enjoined and restrained from selling, encumbering in any fashion or otherwise disposing of the assets of NASR, or their proceeds, Clean Venture will suffer immediate, substantial and irreparable injury.

77. The benefits to Clean Venture in obtaining injunctive relief are equal to, greater to or outweigh the potential harm which defendants would incur if the Court grants the requested injunctive relief.

WHEREFORE, Clean Venture respectfully requests this Court to award the following relief:

    A.    As to Count I (Fraudulent Conveyance), setting aside the or, alternatively, entering judgment in favor of Clean Venture against defendants, jointly and severally, in an amount not less than $75,000;

    B.    As to Counts II through V (under RICO for wire fraud and bank fraud), judgment against all defendants for treble damages and legal fees and expenses as part of the damages;

    C.    As to Counts VI (Unjust Enrichment), VII (Civil Conspiracy), and VIII (Aiding and Abetting), judgment against defendants, jointly and severally, for damages to Clean Venture, in an amount not less than $75,000;

    D.    As to Count IX (Breach of Fiduciary Duty), judgment against defendants Timothy Barletta and Vincent Barletta, jointly and severally, for damages to Clean Venture, in an amount not less than $75,000;

E. As to Count X (Constructive Trust), that this Court impose a constructive trust as pled;

F. In response to Count X (Injunctive Relief), that this Court issue an order granting Clean Venture injunctions restraining and enjoining defendants from conveying or encumbering in any fashion any asset of NASR or any of the proceeds derived therefrom; and

F. That the Court grant on each amount of judgment, prejudgment interest, costs, and such other and further relief as the Court deems appropriate.

Dated: November 13, 2007.

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
Donna Davis Ebaugh
Simms Showers LLP
Suite 702
Twenty South Charles Street
Baltimore, Maryland 21201
Telephone: 410-783-5795
Facsimile: 410-510-1789

OF COUNSEL:
Raymond Robert Wiss
Melissa Kanbayashi
Wiss, Cooke & Santomauro
Three University Plaza
Suite 207
Hackensack, New Jersey 07601
Telephone: 201 488 1030
Facsimile: 201 488 7313

Clean Venture Counsel